AFFIDAVIT

I, Samuel Brown, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since July of 2014. I am currently assigned to the Burlington, Vermont Field Office in the Boston Field Division. I attended the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia full-time for six-and- a-half months. While at FLETC, I received training in practices and methods of illegal firearm possessors, firearm traffickers, and related federal criminal statutes. As a Special Agent, I have conducted and/or participated in a number of investigations involving state and Federal firearm and controlled substance violations. I have interviewed multiple victims, witnesses, and suspects regarding various types of criminal activity. I have also served search warrants for various crimes and have made criminal arrests for firearm and controlled substance violations. Prior to becoming an ATF Special Agent, I was a Law Enforcement Ranger with the United States National Park Service for approximately seven years. As a Ranger, I participated in state and Federal investigations involving possession of illegal weapons including firearms and possession of controlled substances. I also conducted numerous investigative stops and probable cause searches of people and vehicles. I participated in physical surveillance operations and in the service of state and Federal arrest warrants.

2. This affidavit is submitted to show that probable cause exists to believe that Octavious Allen-NAPIER committed violations of 18 U.S.C. § 922(g)(1), felon in possession of a firearm and 18 U.S.C. §922(k), possession of a firearm with an obliterated serial number.

3. The information contained in this affidavit is based on my training and experience, as well as my own investigation and information I received from other agents, law

enforcement personnel, and witnesses. This affidavit is intended to show that there is sufficient probable cause to believe that NAPIER committed the foregoing offenses and does not set forth all facts I know from my investigation into this matter.

4. According to information from the Burlington, VT Police Department (BPD), which I have reviewed, on May 12, 2018, at approximately 3:05 a.m., officers with the Burlington, VT Police Department (BPD) responded to a report of a disturbance at the Marketplace Garage located near the intersection of Bank Street and Cherry Street in Burlington, VT. Upon arrival, officers learned a group of four males had been involved in a fight with five other individuals before fleeing the scene in a black vehicle. Arriving officers collected a magazine for a .380 caliber pistol loaded with six rounds of .380 caliber ammunition at the scene of the fight.

5. BPD witness interviews and follow up investigation lead to a traffic stop of a black Nissan Altima (VT tag# GGY769) shortly after the incident on East Allen Street in Winooski, VT near the intersection with Manseau Street. Officers identified the individuals in the vehicle as Musaab Ali (the driver), Tumba Felekeni (front passenger), and Octavius Allen-NAPIER (rear passenger). Officers observed a .380 caliber round of ammunition next to NAPIER in the backseat and subsequently gained consent from Ali to search the vehicle. Upon searching, officers located a Ruger Model LCP .380 caliber pistol with an obliterated serial number inside a black and grey backpack with a pink zipper. The backpack was located on the floor in the back seat of the passenger compartment of the vehicle. The pistol had one round of .380 caliber ammunition chambered. The three occupants of the vehicle all denied ownership of the firearm and backpack. The firearm and the backpack in which it was found were subsequently seized by BPD for further investigation.

6. BPD also obtained security footage from the Marketplace Garage that showed the fight. I have reviewed the footage which to show an individual, whom I suspected to be Dennis Martin based on a prior, separate law enforcement investigation, strike another individual with a firearm and get into Ali's vehicle. But Dennis Martin was not in the vehicle when it was stopped by BPD. It should be noted that when BPD found the Ruger in the backpack, it did not have an accompanying magazine with it. Additionally, BPD noted that the .380 rounds found in the magazine at the scene of the fight were the same brand (Hornday) as the round found in the firearm's chamber. The round found on the seat was Federal brand, but also .380 caliber.

7. Later on May 12, 2018, BPD Detective Michael Beliveau conducted a closer examination of backpack the firearm that had been recovered from the Nissan and discovered indicia of ownership related to NAPIER (see below for further details).

8. On August 8, 2018, Det. Beliveau and I met with Ali to discuss the recovered firearm. Ali told investigators that on the evening on May 11, 2018 into the morning of May 12, 2018, he went to bars with four other people: Felekeni, Dennis Martin, Carl Martin and NAPIER. Ali said when it was time to go home, he walked to get his car with Felekeni. He said when he pulled up at the fight, Dennis Martin, Carl Martin and NAPIER got into the car with Felekani and him, and he drove them away. Ali said he dropped Dennis Martin and Carl Martin off at a gas station on Main Street in Burlington, VT, and continued with Felekani and NAPIER to the point at which BPD stopped the vehicle.

9. In discussing the vehicle stop, Ali stated the firearm did not belong to him. He said that when he gave consent to BPD to search the vehicle, NAPIER approached him privately, upset that he had given consent. Ali said NAPIER indicated there was something in the vehicle that NAPIER did not want police to find but did not say what it was specifically. Ali said he did

3

not know there was a firearm in his vehicle. He said he believed the firearm was NAPIER's. He said he did not believe it was Felekani's.

10. Ali also said he did not see Dennis Martin with a gun during the fight and had never seen him with a gun. He said he had also never seen Carl Martin with a gun. Ali said he believes the backpack with the gun in it was placed in his car when he was picking up his companions that evening and NAPIER was the only person carrying a backpack to get into his car.

11. I subsequently sent the Ruger .380 caliber pistol to the ATF laboratory for serial number restoration. On or about November 1, 2019, the laboratory reported the restored serial number to be 375-26380. I then checked the firearm's serial number in the FBI's National Crime Information Center (NCIC) and learned it had been reported stolen in Johnstown, PA on March 20, 2017. I further learned that the ATF's National Integrated Ballistic Information Network (NIBIN) had compared a test fired round from the Ruger .380 caliber pistol against samples submitted to the system and acquired a match. According to NIBIN, the firearm was used in a property crime in Philadelphia, PA on October 8, 2017. While the Philadelphia Police Department report I reviewed noted no suspect related to the property crime, it should be noted that NAPIER lists his place of birth as Philadelphia and his mother still lives there.

12. On November 22, 2019, I took custody of the black and grey backpack with a pink zipper from BPD. Neither NAPIER nor any of the other occupants of the Nissan had made contact with BPD in an attempt to have it returned. I examined the contents of the backpack and found it contained tattoo needles, a Citizens Bank ATM receipt (listing an account number later linked to NAPIER through a review of bank records), an asthma inhaler, and a notebook. Upon closer examination of the notebook, I located a drawing of a nude woman with "Octavious"

4

tattooed on her leg. The drawing was signed "By: Keem". I also found a Philadelphia, PA Health Center appointment card for NAPIER with an appointment date of November 25, 2015.

13. In examining NAPIER's criminal history pre-May 12, 2018, I learned he had been convicted of carrying a firearm without a license, a felony, in Philadelphia, PA Municipal Court on April 25, 2013 (docket# CP-51-CR-0000577-2013). In reviewing certified conviction records provided by the State of Pennsylvania, I noted an included "colloquy for plea of guilty" stating NAPIER pled guilty to the aforementioned felony and could have received seven years in prison. The documents states, "I knowingly, voluntarily, and intelligently make this plea of guilty" and is signed by NAPIER and dated April 25, 2013. A further statement on the "written plea colloquy" states "I know I can go to jail for up to 7 years" and is signed by NAPIER (as Octavius Allen) and includes a certification from his defense attorney that NAPIER reviewed and understood all of the plea documents.

14. On April 29, 2020, NAPIER was arrested by BPD for a probation violation (NAPIER was on probation for a felony he sustained after the May 12, 2018 incident described herein). Subsequent to his arrest, BPD Detective Thomas Chenette and I attempted to interview NAPIER. NAPIER was provided his Miranda warnings and consented to an interview. In discussing the 2018 case, NAPIER told Det. Chenette and me that on the night in question, he had been very intoxicated and did not recall many details, including any fight. He said he was drinking with Carl Martin but Dennis Martin was not with them. He said the firearm was not his, but the backpack and its other contents did belong to him. He recalled an asthma inhaler, tattoo accessories, and a notebook among the items in the backpack. He said he did not know how the firearm got into his backpack. NAPIER was also asked about his nicknames. He said one of his

5

nicknames was "Keem". Toward the end of the interview, NAPIER claimed to be having an asthma attack and was transported to the hospital by the Burlington, VT Fire Department.

15. Later on April 29, 2020, I consulted with ATF Special Agent Joseph Davis who is an expert in the interstate nexus of firearms. According to SA Davis, the Ruger firearm in this case was not manufactured in Vermont and thus its presence in Vermont means that it previously traveled in interstate commerce.

Dated at Burlington, Vermont, this 30th day of April 2020.

SAMUEL BROWN
ATF Special Agent

Sworn to and subscribed before me this 30th day of April 2020.

HONORABLE JOHN M. CONROY
United States Magistrate Judge